UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BANK OF MONTREAL, )
as Administrative Agent, )
 )
                Plaintiff, ) Case No. 09 C 3479
    v. )
 ) Judge Joan B. Gottschall
SK FOODS, LLC, )
a Nevada Limited Liability Company, )
 )
                Defendants. )

## MEMORANDUM OPINION & ORDER

Bank of Montreal brought this action as agent for several lenders, seeking to collect on over $190 million in sums borrowed by SK Foods, L.P. and RHM Industrial/Specialty Foods, Inc. (collectively, the "Borrowers"), neither of which is a party to this case. Rather, Bank of Montreal seeks to collect from SK Foods, LLC (the "Guarantor"), which guaranteed the debt incurred by the Borrowers. Presently before the court are Bank of Montreal's motion to strike the Guarantor's defenses, and the Guarantor's motion to transfer this case to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1404(a).

The court denies the Guarantor's motion to transfer, and grants in part Bank of Montreal's motion to strike.

### I. BACKGROUND

According to the complaint, the Borrowers borrowed over $190 million from several lenders, for which Bank of Montreal is the agent, in order to finance the operation of the Borrowers' tomato processing business. To secure this financing, the Borrowers

and the Guarantor pledged nearly all of their personal property as collateral under a Credit Agreement.

The Borrowers defaulted on the Credit Agreement, then entered into chapter 11 restructuring proceedings in the United States Bankruptcy Court for the Eastern District of California. Subsequently, Bank of Montreal brought this action against the Guarantor. The Guarantor answered and moved to transfer this case to the United States District Court for the Eastern District of California, where the bankruptcy case and other related proceedings are pending. In its answer, the Guarantor asserts affirmative defenses of economic duress, mistake, and breach of the implied covenant of good faith and fair dealing, all under Illinois law. Bank of Montreal moved to strike these affirmative defenses.

## II. TRANSFER MOTION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "A § 1404(a) transfer will be granted if the moving party establishes: (1) that venue is proper in the transferor district; (2) that venue and jurisdiction are proper in the transferee district; and (3) that the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice." *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1310 (N.D. Ill. 1993) (citing *Coffee v. Van Dorn Iron Works*, 793 F.2d 217, 219 & n.3 (7th Cir. 1986)).

In evaluating venue, the court considers that where, as here, diversity jurisdiction exists, venue is proper in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

### A. Venue in this district

The Guarantor asserts that venue is proper in this district because of a venue provision in the Credit Agreement forming the basis of the guarantee at issue. In that provision, the parties submit to the nonexclusive jurisdiction of this court. Objections to venue and personal jurisdiction can be waived, *see Moore v. Olson*, 368 F.3d 757, 759 (7th Cir. 2004), and the Guarantor has done so here, either by its execution of the Credit Agreement, *see Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990), or by its stated concession in its transfer motion. Mot. 2-3. Therefore, venue is proper in this district.

### B. Venue and jurisdiction in the transferee district

Diversity jurisdiction is proper in the transferee district because the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)&(c). However, the parties dispute whether venue is proper in the transferee district. In support of venue in the Eastern District of California, the Guarantor points to the bankruptcy filing there, and states that "the Credit Agreement and Notes were executed in California," and that "Borrowers are California entities," which the Guarantor asserts is relevant because the Borrowers' default led to the instant suit. Mot. 3.

Yet, as Bank of Montreal notes in its response, the Guarantor does not state that the relevant agreements were executed in the transferee *district*, or that the acts giving

3

rise to the default occurred there, simply making statements about events occurring in California generally. In reply, the Guarantor fails to clarify the issue, stating conclusorily that "In addition to the execution of the Credit Agreement, Notes and Guaranty, certain defaults under the Credit Agreement were actions or omission by Borrowers that make bringing this case in the Eastern District proper." Reply 2-3. The court cannot determine whether the Guarantor, given two opportunities to do so, is alleging that the events giving rise to this cause of action actually occurred in the transferee district.[1] The Borrowers' bankruptcy and related actions are the only clear tie to the transferee district. But the Guarantor cites no authority suggesting that this alone is sufficient to make venue proper in the transferee district, particularly considering neither party to this action is the debtor in the bankruptcy proceeding. The court finds that the Guarantor has failed to establish that venue is proper in the transferee district, and therefore denies the Guarantor's transfer motion without reaching the convenience and justice considerations.

### III. MOTION TO STRIKE

On its own or on a party's motion, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored, although they can be useful in resolving issues early in the case. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). "Affirmative defenses will be stricken 'only when they are insufficient on the face of the pleadings.'" *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (citing *Heller Fin.*, 883 F.2d at 1294). To survive a

---

[1] Even if the Guarantor had properly *asserted* in its briefing that the acts and omissions giving rise to this action occurred in the transferee district, it has failed to support its allegations with any *evidence*, whether through affidavit or otherwise, of the relevant activities in the transferee district.

4

motion to strike, an affirmative defense: (1) must be properly pled as such; (2) must satisfy the pleading standards set forth in Rules 8 and 9; and (3) must state a claim pursuant to Rule 12(b)(6). *See Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 905 (N.D. Ill. 2006). As the parties agree, the question of whether each matter is properly pled as an affirmative defense, like other questions of substantive law in this case, is governed by Illinois law. *See Williams*, 944 F.2d at 1400; *see also* Credit Agreement § 13.18.

### A. Economic duress

The Guarantor states in its response that it withdraws its economic duress affirmative defense. Resp. 11. Therefore, the Bank of Montreal's motion to strike is denied as moot.

### B. Mistake

The entirety of Guarantor's second affirmative defense, alleging mutual mistake, reads as follows:

> When Borrower and Lenders entered into the Credit Agreement, it was contemplated that a guarantee would be given by an entity related to Borrower, but Guarantor was not the intended entity. Both Borrower and Lenders knew that Guarantor had entered into lending agreements that would have prohibited Guarantor from hypothecating any of its assets to Lenders. Guarantor did not discover the mistake until about the time that bankruptcy petitions related to borrower [*sic*] were filed.

Answer 55.

Bank of Montreal responds that this affirmative defense fails to plead the elements required for reformation based on mistake, is barred by Illinois law, and fails to satisfy Rule 9's heightened pleading requirements for allegations of mistake. *See Instituto Nacional de Comercializacion Agricola (Indeca) v. Cont'l Ill. Nat'l Bank & Trust Co.*, 576 F. Supp. 985, 988 (N.D. Ill. 1983).

5

The mistake affirmative defense fails to satisfy multiple federal pleading standards. First, the Guarantor fails to plead facts regarding mistake with particularity, as required by Rule 9(b). *See United States ex rel. James Cape & Sons Co. v. Am. Home Assurance Co.*, 2004 WL 3119029, at *8 (N.D. Ill. Dec. 3, 2004) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). It is unclear from the face of this affirmative defense whether the alleged mistake was made by the Borrower, the Lenders, the Guarantor, or all three.

Moreover, the mistake affirmative defense is not plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Credit Agreement, at page S-1, contains the signatures of the Borrowers and of the Guarantor, the latter of which is clearly indentified as SK Foods, LLC. The parties agree that one representative signed for all three entities. It is wholly implausible that the Guarantor could be mistaken as to its own identity, and similarly implausible that the Borrowers would be confused, in light of the unambiguous identification of the Guarantor on the signature page.

Bank of Montreal's motion to strike is accordingly granted as to the Guarantor's mistake affirmative defense.

### C. Breach of the implied covenant of good faith and fair dealing

Finally, Bank of Montreal urges that this court strike the Guarantor's affirmative defense alleging that Bank of Montreal breached its implied covenant of good faith and fair dealing (the "good-faith affirmative defense"). The Guarantor's good-faith affirmative defense consists of a litany of allegations of conduct by Bank of Montreal just before, and in the months after, it found the Borrowers in default. Specifically, Guarantor alleges that Bank of Montreal: refused to extend additional credit to the Borrowers;

6

exercised control over and restricted use of the Borrowers' accounts and other financial resources; required the Borrowers to incur expenses related to the sale of their assets; required appointment of new directors to their boards; interfered with Borrowers' customer General Mills; cut off Borrowers' efforts to sell some assets; and prohibited Borrowers from making payments necessary to satisfy certain contractual obligations. The Guarantor asserts that Bank of Montreal, in taking these actions, breached its duty of good faith and fair dealing, apparently under the theory that Bank of Montreal would rather collect from the Guarantor than from the Borrowers.

The good-faith affirmative defense, which is properly brought as an affirmative defense, *see N. Trust Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1101 (Ill. App. Ct. 1995), must satisfy Rules 8 and 12(b)(6). Bank of Montreal argues that the Guarantor's good-faith affirmative defense fails the "facial plausibility" standard. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the [pleading party] pleads forth factual content that allows the court to draw the reasonable inference that the [non-pleading party] is liable for the misconduct alleged." *Id.*; *see also CTF Dev., Inc. v. Penta Hospitality, LLC*, No. 09 C 02429 WHA, 2009 WL 3517617, at *8 (N.D. Cal. Oct. 26, 2009) (finding *Iqbal* applicable to affirmative defenses). The pleading party must do more than state facts that are "'merely consistent with'" liability. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Here, according to the Guarantor's allegations, Bank of Montreal has generally acted in a manner equally consistent with lawful behavior. *See Twombly*, 550 U.S. at 565-66. Of course, it is possible that Bank of Montreal ran the Borrowers into the ground in order to collect from Guarantor. The more probable explanation, though, is that Bank

of Montreal did not want to throw good money after bad by extending the Borrowers further credit after they defaulted, and that it imposed strictures on the Borrowers to protect any assets by which the Borrowers might satisfy their obligations under the Credit Agreement.

Although the allegations in the affirmative defense strike the court as somewhat implausible, striking the good-faith affirmative defense at this early stage is inappropriate. In Illinois, good faith "requires that the parties exercise honesty in fact, and prudence in the exercise of discretion." *Cont'l Bank N.A. v. Modansky*, 997 F.2d 309, 312 (7th Cir. 1993) (citing Illinois law). It may be that Bank of Montreal was honest and prudent in its attempt to collect from the Borrowers. However, unlike the court in *Modansky*, which evaluated the good-faith affirmative defense from a fully developed record, this court cannot determine from the pleadings whether the Bank of Montreal was, in fact, honest or prudent. There are factual matters, such as the Bank of Montreal's honesty in the Borrowers' dealings with General Mills, that preclude striking the affirmative defense. Other issues of fact, such as the comparative assets of the Guarantor and the Borrowers, might make the Guarantors' claims more or less plausible. Taking inferences in the Guarantor's favor, the court denies Bank of Montreal's motion to strike with respect to the good-faith affirmative defense.

### IV. CONCLUSION

For the reasons stated above, the Guarantor's motion to transfer this action is denied, and Bank of Montreal's motion to strike the Guarantor's affirmative defenses is granted in part.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 13, 2009