# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BANK OF MONTREAL, )
as Administrative Agent, )
 )
              Plaintiff, ) Case No. 09 C 3479
    v. )
 ) Judge Joan B. Gottschall
SK FOODS, LLC, )
a Nevada Limited Liability Company, )
 )
             Defendant. )

## MEMORANDUM OPINION & ORDER

Bank of Montreal (the "Bank") brought this action as agent for several lenders (the "Lenders"), seeking to collect from SK Foods, LLC (the "Guarantor") over $190 million that the Bank loaned to SK Foods, L.P. and RHM Industrial/Specialty Foods, Inc. (collectively, the "Borrowers"). Presently before the court is the Bank's Motion for Summary Judgment. (Doc. 35.)

### I. BACKGROUND

The Bank filed its Motion for Summary Judgment on May 7, 2010. (*Id.*) The court set a briefing schedule in which it allowed the Guarantor until June 9, 2010 to file its response. (Doc. 41.) On the day before its response was due, the Guarantor moved for an extension of time, which the court granted, giving the Guarantor until July 16, 2010 to file its response, and indicating that no further extensions would be given. (Doc. 48.) On July 6, 2010, the Guarantor again moved for an extension of time, which the court granted, giving the Guarantor until July 26, 2010 to file its response. (Doc. 60.) On July 26, 2010, the Guarantor's lead counsel moved to withdraw, citing a conflict of

interest. (Doc. 68) The court granted the motion (Doc. 71), but noted that it would not extend the then-expired briefing schedule for the Guarantor to obtain new counsel.

Since then, the Guarantor has not appeared through new counsel, and has not made any attempt to file a response to the instant motion. In compliance with Local Rule 56.1, the Bank filed with its motion a statement of material facts for which there is no genuine issue. (Doc. 37.) When the non-movant fails to respond to such a statement of fact, it is within the court's discretion to deem the facts admitted. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922-23 (7th Cir. 1994). In light of the Guarantor's repeated failure to respond timely to the Bank's motion, the court deems the Bank's facts admitted.

On September 28, 2007, the Borrowers, the Bank, and the Guarantor all signed a Credit Agreement. On the same day, the Borrowers and the Guarantor separately executed a Security Agreement, pledging substantially all of their assets to the Bank to secure their obligations under the Credit Agreement. The parties entered into several amendments of the Credit Agreement, as well as several notes, pursuant to which the Borrowers borrowed over $190 million. In March 2009, the Borrowers defaulted on the Credit Agreement but, the Guarantor, the Borrowers, and the Bank entered into a series of three forbearance agreements to give the Borrowers some time to pay back their debt. On April 16, 2009, after the periods of forbearance expired without the Borrowers' satisfaction of their debt, the Bank terminated its obligation to extend credit to the Borrowers, accelerated all of the Borrowers' obligations, and demanded from the Borrowers and the Guarantor payments of all amounts due and owing under the Credit

Agreement. Both the Borrowers and the Guarantor refused payment and performance of the obligations. The Bank then brought this suit.

## II. LEGAL STANDARD

Summary judgment is warranted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Turner v. Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010); *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). In evaluating a motion for summary judgment, the court must first determine whether the movant has demonstrated the absence of a genuine issue of material fact and so is entitled to judgment as a matter of law. *See Beard v. Banks*, 548 U.S. 521, 529 (2006). If the movant has done so, the court next inquires whether the non-movant has established a genuine issue of material fact precluding summary judgment. *Id.*; *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999). If not, then the court should enter judgment as a matter of law. *Beard*, 548 U.S. at 529. The defendant bears the burden of establishing its affirmative defense. *Zenith Elecs. Corp. v. Panalpina, Inc.*, 68 F.3d 197, 201 (7th Cir. 1995).

## III. ANALYSIS

The Bank brought claims for breach of contract and foreclosure of security interest, and seeks summary judgment on each claim.

**A.     Breach of Guaranty**

The Bank argues that it is entitled to a judgment for breach of the guaranty. In analyzing the Bank's assertions, the court considers: (1) whether a contract existed; (2) whether the contract was breached; and (3) whether the guaranty also was breached. As in other diversity cases, the court applies the law of the forum state, Illinois. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008).

1.     Existence of a Contract

An enforceable contract requires: "(1) offer and acceptance; (2) definite and certain terms; (3) consideration; and (4) performance of all required conditions." *Tower Investors, LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 937 (Ill. App. Ct. 2007). In this case, the parties agree that the Borrowers and the Guarantor executed the Credit Agreement (Stmt.[1] ¶ 6; Ex. B-1), which was subsequently amended and restated by later agreements (Stmt. ¶¶ 13-14), and the Security Agreement (Ex. B-5). Each agreement sets forth definite terms. The Borrowers then borrowed over $190 million from the Agent pursuant to the Credit Agreement. (*Id.* ¶ 5.) The evidence produced by the Bank also establishes that it completed all required conditions, and more, including agreeing to forbear from collecting on the Borrowers' default. Thus, the Bank has established that it entered into an enforceable contract, the Credit Agreement and its amendments, with the Borrowers and the Guarantor.

2.     Breach of Contract

"To succeed on a claim for breach of contract, a plaintiff must plead and prove (1) the existence of a contract, (2) the performance of its conditions by the plaintiff, (3) a

---

[1]     Citations to "Stmt." refer to the Bank's Statement of Material Facts, and citations to "Ex." refer to exhibits attached thereto.

4

breach by the defendant, and (4) damages as a result of the breach." *Roberts v. Adkins*, 921 N.E.2d 802, 810 (Ill. App. Ct. 2010). As noted above, the Bank has established the existence of a contract and that it has performed its necessary conditions. The Bank also has demonstrated that the Borrowers failed to make payments when due (Stmt. ¶ 9), and that the Guarantor also failed to make payments (*id.* ¶ 10). The uncontradicted evidence further establishes that the Borrowers failed to make several additional payments that they owed pursuant to loans executed pursuant to the Credit Agreement. (*Id.* ¶¶ 29-32, 36-39.) These failures constituted "Events of Default" within the meaning of the Credit Agreement. (*Id.* ¶ 33.) Nevertheless, both the Borrowers and the Guarantor refused to make payment on the amounts owing. (*Id.* ¶¶ 34-35.)

The Bank also has established that it loaned over $190 million to the Borrowers. While, as explained within, it has not produced evidence of the specific value of its damages, the Bank has established that the Borrowers breached the agreements, and that the Bank suffered some damages by virtue of the Borrower's and the Guarantor's failure to make payments when due.

3. Breach of Guaranty

Last, the Bank seeks to establish that the Guarantor breached its obligation under the Credit Agreement to provide a guaranty for the Borrowers' indebtedness. Under Illinois law, a suit on a guarantee requires that the plaintiff "enter[] proof of the original indebtedness, the debtor's default and the guarantee." *Mid-City Indus. Supply Co. v. Horwitz*, 476 N.E.2d 1271, 1277 (Ill. App. Ct. 1985); *see also Gen. Elec. Bus. Fin. Servs., Inc. v. Silverman,* No. 09 C 0364, 2010 U.S. Dist. Lexis 11622, at *6 (N.D. Ill. Feb. 10, 2010) (quoting *Mid-City*); *Fifth Third Bank (Chicago) v. Stocks*, No. 09 C 3463, 2010

WL 2654744, at * 2 (N.D. Ill. July 1, 2010) (quoting *Silverman*). Where, as here, the guaranty was executed at the same time as the original obligation, no separate consideration for the guaranty is required. *See Tower Investors, LLC*, 864 N.E.2d at 937 (citing, *inter alia*, Restatement (Third) of Suretyship and Guaranty § 9, Comment a, at 35 (1996) ("Typically, the consideration supporting the underlying obligation will also support the secondary obligation and no separate consideration is necessary.").) Here, as described above, the Bank has produced evidence of the original indebtedness (the valid, enforceable Credit Agreement and amendments thereto), and the Borrowers' default (due to non-payment and non-compliance with the forbearance agreements). The Bank also has produced evidence of the Guarantor's agreement to the guaranty by its execution of the Credit Agreement. Last, the Bank has produced evidence that the Guarantor failed to make payment on the guaranty when demanded. The Bank has established each of the elements of its breach of guaranty as a matter of law.

**B.      Foreclosure on Collateral**

The Bank also moves for summary judgment on its claim seeking foreclosure on its security interest in the Guarantor's property. According to the undisputed facts, in 2006 the Bank filed a UCC Financing Statement with the Nevada Secretary of State[2] "covering all right, title and interest in and to all of the personal property and fixtures of the Guarantor, whether now owned or existing or hereafter created, acquired, or arising." (Stmt. ¶ 48.) Then, on September 28, 2007, the same day that it executed the Credit Agreement, the Guarantor executed the Security Agreement in favor of the Bank, pledging substantially all its assets as security for its obligations under the Credit

---

[2]      The Guarantor is a Nevada limited liability company. (Stmt. ¶ 2.)

Agreement, the amendments thereto, and any notes executed pursuant to the Credit Agreement. (*Id.* ¶ 47.) The Guarantor is in default on at least one of its obligations under the Credit Agreement (*id.* ¶ 50), and has refused to surrender possession of the pledged collateral despite the Bank's demand (*id.* ¶ 51).

> An Illinois appellate court recently explained:
>
> Illinois law defines a "security interest" as "an interest in personal property * * * which secures payment or performance of an obligation." 810 ILCS 5/1-201(37) (West 2006). By creating a security interest through a security agreement, a debtor provides that a creditor may, upon default, take or sell the property-or collateral-to satisfy the obligation for which the security interest is given. 810 ILCS 5/9-103(12) (West 2006) ("'Collateral' means the property subject to a security interest," and includes accounts and chattel paper which have been sold); *Smith v. The Cash Store Management, Inc.,* 195 F.3d 325, 329 (7th Cir.1999) (applying Illinois law).

*Randle v. AmeriCash Loans, LLC*, No. 1-09-2318, 2010 WL 3001366, at *4 (Ill. App. Ct. July 30, 2010). After default, a secured party can seek judicial assistance in retaking possession of collateral. 810 Ill. Comp. Stat. § 5/9-609. Here, the Borrowers and the Guarantor, by executing the Security Agreement, gave the Bank a security interest in substantially all their property. (*See generally* Ex. B-5.) The Borrowers and the Guarantor then defaulted, entitling the Bank, which is a secured party, *see* 810 Ill. Comp. Stat. § 5/9-102, to foreclose upon its security interest.

**C.    Bad Faith**

In its answer, the Guarantor asserted affirmative defenses of duress, mistake, and bad faith. The Guarantor subsequently withdrew its duress affirmative defense, and the court struck the mistake affirmative defense. The Guarantor bears the burden at this stage of demonstrating sufficient evidence to support its remaining affirmative defense of bad faith. *Zenith Elecs.*, 68 F.3d at 201. By not responding to the motion for summary

7

judgment, the Guarantor has failed to produce any evidence of bad faith, and its lone remaining affirmative defense fails.

## IV. CONCLUSION

For the foregoing reasons, the Bank's motion for summary judgment is granted in part. The court enters judgment in favor of the Bank and against the Guarantor on Counts I and II of the Bank's complaint. The court orders (1) the foreclosure of the Bank's interest in the collateral described in the Security Agreement, and (2) the Guarantor to assemble the collateral. 810 Ill. Comp. Stat. § 5/9-609(c). The court also finds that the Bank has power of attorney to execute documents in the Guarantor's name, as the Security Agreement entitles it to do. (Ex. B-5 at 16.)

However, the court declines to award further relief at this time due to deficiencies in the Bank's briefing. For example, while the Bank prays for the entry of judgment in the amount of $136,765,858.91, it has produced no evidence regarding the specific amount of damages it has incurred. Moreover, the Bank requests an award of attorneys' fees and costs, to which the Security Agreement entitles it, but produces no evidence of such fees.

This case is set for a status hearing on September 14, 2010. If the Bank wishes to prove the amount of its judgment at that hearing, it must give at least three days notice to the Guarantor by the best means practicable, given the Guarantor's counsel's withdrawal. ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 19, 2010