# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BANK OF MONTREAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09 C 3479 |
| ) | |
| SK FOODS, LLC ) | Honorable Joan B. Gottschall |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In June 2009, Bank of Montreal ("BMO"),[1] as an administrative agent acting on behalf of certain lenders, brought this diversity suit against SK Foods, LLC ("SK Foods"), seeking to collect an outstanding balance due to the lenders under a credit agreement between the lenders, SK Foods, SK Foods' subsidiaries, and other SK Foods-related entities, and to foreclose on collateral held by the lenders under the same agreement. On September 28, 2010, this court entered a judgment in favor of BMO and against SK Foods for over $128,000,000. (*See* ECF No. 81.) On December 23, 2010, BMO initiated supplemental proceedings in this court by filing a Citation to Discover Assets (the "Citation") under 735 Ill. Comp. Stat. 5/2-1402 as to a third party, Cary Scott Collins, not named in the underlying action, to locate SK Foods' assets to satisfy the judgment against SK foods.[2] (*See* Citation to Discover Assets, Dec. 23, 2010, ECF No. 83.)

---

[1] The court employs the acronym used by Bank of Montreal in referring to itself in its submissions to the court.

[2] *See Dexia Crédit Local v. Rogan*, 629 F.3d 612, 622 (7th Cir. 2010) ("The service of a citation to discover assets initiates supplemental proceedings.") (citing 735 ILL. COMP. STAT. 2-1402(a) and *Cacok v. Covington*, 111 F.3d 52, 53 (7th Cir. 1997)).

Now before the court are two motions arising from the supplemental proceedings. Collins moves to dismiss and/or quash the Citation for lack of personal jurisdiction. (*See* ECF No. 94.) As part of his reply memorandum in support of his motion to dismiss, Collins submitted an affidavit containing statements that BMO vigorously contests. (*See* ECF No. 101-1.) BMO has filed a motion *in limine* asking the court to strike the affidavit. (*See* ECF No. 105.)

For the reasons set out below, the court denies both Collins' motion to dismiss and/or quash the Citation and BMO's motion *in limine*.

## II.     BACKGROUND[3]

Collins came to this court's and BMO's attention in September 2010 when, through SK Foods' counsel, he submitted an affidavit in the action underlying this supplemental proceeding. (*See* Decl. of Cary S. Collins in Resp. to Decl. of Lawrence Mizera, Sept. 22, 2010, ECF No. 78 (hereinafter "Collins Decl.").) The caption of the affidavit clearly indicated that it was prepared for submission to the United States District Court for the Northern District of Illinois and for the court's consideration in the underlying breach of contract case. (*See id.*) BMO had filed the underlying suit against SK Foods seeking to collect over $190,000,000 that BMO had loaned to SK Foods, LP[4] and RHM Industrial/Specialty Foods, Inc. (collectively, the "Borrowers") under a credit agreement.[5] SK Foods pledged substantially all of its assets to BMO as a guarantor to

---

[3] When the issue of personal jurisdiction is presented on the basis of written materials, the plaintiff need only make a prima facie showing of jurisdictional facts. Any factual disputes are resolved in BMO's favor. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2003) (In deciding a motion to dismiss for lack of personal jurisdiction on written submissions alone, "[the court] take[s] as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff.").

[4] SK Foods, LP is a California limited partnership in which Salyer had a controlling interest prior to its bankruptcy and liquidation in 2009. As an SK Foods, LP creditor, BMO initiated the limited partnership's bankruptcy through petition in May 2009.

[5] For a more complete recitation of the facts of the underlying case, see the court's prior opinions at *Bank of Montreal v. SK Foods, LLC*, NO. 09 C 3479, 2009 WL 3824668 (N.D. Ill. Nov. 13, 2009), and *Bank of Montreal v. SK Foods, LLC*, No. 09 C 3479, 2010 WL 3385534 (N.D. Ill. Aug. 19, 2010).

secure the loans. In April 2009, after the Borrowers defaulted on the credit agreement and failed to satisfy their debts despite the expiration of multiple forbearance periods, BMO demanded payment from the Borrowers and from SK Foods as a guarantor. After both the Borrowers and SK Foods refused to pay, BMO brought a breach of contract suit in this court in June 2009. The court granted BMO partial summary judgment in its favor. *See Bank of Montreal v. SK Foods, LLC*, No. 09 C 3479, 2010 WL 3385534, at *4 (N.D. Ill. Aug. 19, 2010). In September 2010, the court entered judgment awarding BMO over $128,000,000. (*See* ECF No. 81.)

Just before the court entered judgment, Collins voluntarily submitted, through SK Foods' counsel, his affidavit offering statements in his capacity both as a personal and business accountant for F. Scott Salyer (a party with a controlling interest in SK Foods) and as an officer and director of Cedenco, a New Zealand firm alleged by BMO to be a foreign subsidiary of SK Foods at all times relevant to this proceeding.[6] (*See* Collins Decl.) In the affidavit, Collins gave statements concerning Cedenco's and SK Foods, LP's finances in support of an affirmative defense SK Foods raised, and which the court rejected, in the underlying action. He also stated that "[i]f called upon to testify in this case, [he] could competently testify" regarding his statements. (*Id.*)

After submitting his affidavit, Collins again came to the attention of BMO via a federal criminal investigation of Salyer and various adversary proceedings arising from the bankruptcy of SK Foods, LP. Evidence drawn from the investigation and proceedings suggests that after BMO filed suit in this court against SK Foods, Salyer transferred SK Foods' assets overseas; these assets would have been subject to this court's judgment. Based on this evidence, BMO

---

[6] There is some dispute between the parties as to where Collins was situated within the SK Foods corporate structure and the timeframe during which Collins was a director and officer. There is also a dispute as to who controls which SK Foods-related entities. These disputes, however, are immaterial to the resolution of these motions.

came to suspect that Collins aided Salyer in transferring money overseas to avoid a judgment in this court. Accordingly, BMO filed its Citation to conduct an examination of Collins to discover any assets to which BMO might be entitled under the judgment. In particular, BMO alleges here that its submissions in support of its Citation show, among other things, that Collins carried out certain of these transfers, may know where the transferred assets are, and may still have SK Foods' assets in his control.

Collins admits that he has some documents responsive to the document request BMO made pursuant to the Citation. However, after being served the Citation at his home in California, Collins mailed this court and BMO's counsel a letter challenging this court's personal jurisdiction over him. (*See* ECF No. 88.) After BMO notified him that the challenge was not properly before the court, (*see* ECF No. 94-1,) Collins hired local counsel, who filed the motion to dismiss for lack of personal jurisdiction.

In his motion to dismiss, Collins notes that he is an accountant living and working in California. He has not physically been in Illinois in seventeen years, has no clients in Illinois, has not conducted any business in Illinois, and does not own any property in Illinois. In an affidavit he submitted with his motion, he states that the affidavit he submitted in the underlying litigation was executed in California and that he did not intend, by its submission, to submit himself to personal jurisdiction in Illinois. (Collins' Mot. to Dismiss and/or Quash Citation to Discover Assets to a Third Party, Ex. B, ¶ 3, ECF No. 94-1.)

### I.  LEGAL STANDARD

Rule 69(a)(1) of the Federal Rules of Civil Procedure provides that the procedure in supplemental proceedings for enforcing federal court judgments "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."

4

Here, as no federal statute is applicable, the court's supplemental proceeding is governed by the relevant provisions of Illinois law. Section 2-1402(a) of the Illinois Code of Civil Procedure and Illinois Supreme Court Rule 277(a) allow a judgment creditor to bring a supplemental proceeding against any party to (a) question that party under oath about the whereabouts of assets that can be used to satisfy the judgment, and (b) compel application of any discovered assets towards satisfaction of the judgment. 735 Ill. Comp. Stat. 5/2-1402; Ill. Sup. Ct. R. 277(a); *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1223 (7th Cir. 1993). Because proceedings "to enforce judgment are meant to be swift, cheap, and informal . . . Rule 69 [of the Federal Rules of Civil Procedure was not] meant to put the judge into a procedural straightjacket whether of state or federal origin." *Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 661 (7th Cir. 2009) (citing *Ruggiero*, 994 F.2d at 1226) (internal quotation marks omitted). Nevertheless, this court may analogize this supplemental proceeding to a regular civil proceeding to the extent such a comparison is helpful. *Ruggiero*, 994 F.2d at 1226 (treating supplementary proceedings analogously with regular civil proceedings for purposes of appealability). This court chooses to do so and adopts the familiar standard for deciding jurisdictional issues.

Accordingly, the plaintiff bears the burden of demonstrating jurisdiction. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "In addition to the well-pleaded facts in the complaint, the court may also consider facts set forth in affidavits." *MacNeil Auto. Prods. Ltd. v. Cannon Auto. Ltd.*, No. 08 C 139, 2011 WL 4435619, at *2 (N.D. Ill. Sept. 22, 2011) (citing *Tamburo*, 601 F.3d at 700 ("At this stage . . . we take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff.")); *Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1027 (N.D. Ill. 2009) ("In

determining whether a prima facie case has been established, the Court can consider materials such as affidavits." (citing Purdue, 338 F.3d at 782)). When the movant's jurisdictional challenge is based on the submission of written materials alone, as it is here, the party asserting personal jurisdiction need only make out a prima facie case of personal jurisdiction. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (citing *Tamburo*, 601 F.3d at 700, and *Purdue*, 338 F.3d at 782). If the movant has submitted evidence such as affidavits in support of the motion to dismiss, then the plaintiff "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research*, 338 F.3d at 782-83. The plaintiff, however, in making out a prima facie case, is entitled to resolution of all relevant factual disputes in his or her favor and to a liberal reading of the record. *Id.* at 782; *Tamburo*, 601 F.3d at 700 (applying the prima facie standard and taking as "true all well-pleaded facts alleged in the complaint and resolv[ing] any factual disputes in the affidavits in favor of the plaintiff"); *see also C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 843 (N.D. Ill. 2009) ("The Court resolves factual disputes in the pleadings and affidavits in favor of the party asserting jurisdiction, but takes as true those facts contained in defendant's affidavits that remain unrefuted by the plaintiff.").

### III. ANALYSIS

#### A. BMO's Motion in Limine

In its motion *in limine*, BMO expresses concern that the court will be led astray by factual assertions Collins made for the first time in an affidavit attached to his reply memorandum in support of his motion to dismiss. As explained above, the court will resolve any factual disputes in BMO's favor. However, since the court finds (as explained below) that Collins' submission of an affidavit to this court in September 2010 subjects him to this court's

jurisdiction, there are no *material* factual disputes. As a practical matter, this fact moots BMO's motion *in limine*. Accordingly, BMO's motion *in limine* is denied.

B.     *Collins' Motion to Dismiss and/or Quash the Citation*

A court must have personal jurisdiction over the citation respondent in order to have the authority to preside over the citation proceeding. *See Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855 (7th Cir. 2011) ("A court without personal jurisdiction of the defendant is wholly without power to proceed to an adjudication binding on that defendant.") (internal quotations and citations omitted); *Woolard v. Woolard*, No. 05-C-7280, 2009 WL 3150435, at *3 (N.D. Ill. Sept. 23, 2009) (noting that a court must establish personal jurisdiction under the Illinois long-arm statute to properly issue a citation); *cf. Wachovia Secs., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547 (N.D. Ill. 2008) (requiring personal jurisdiction over an individual not named in the action underlying a citation proceeding for that individual to be subject to contempt for failing to comply with a citation). "A federal court exercising diversity jurisdiction has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction. Illinois extends personal jurisdiction to the limits allowed by the United States Constitution, so the state and federal standards are congruent here." *Philos Techs., Inc.*, 645 F.3d at 855 n.2 (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997) and *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760-61 (7th Cir. 2008)); *see* 735 Ill. Comp. Stat. 5/2-209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.").

In *Hyatt International Corp. v. Coco*, 302 F.3d 707 (7th Cir. 2002), however, the Seventh Circuit recognized that the Illinois Supreme Court, wishing to give a "'definite meaning and scope'" to the long-arm statute that did not "'fluctuate with every new pronouncement on the

7

limits of Federal due process,'" had in one case carried out an independent analysis of the due process limits on personal jurisdiction under the Illinois Constitution. *Id.* at 715 (quoting *Rollins v. Ellwood*, 565 N.E.2d 1302, 1314 (Ill. 1990)). In its jurisdictional analysis in *Coco*, the Seventh Circuit noted that while the two constitutional analyses "hypothetically might diverge in some cases," in the case at bar, no such divergence was evident. 302 F.3d at 715-16. Here, the court follows a similar track: it notes the possibility of a divergence, but finds nothing in the record to suggest a divergence here.

In *Rollins*, the Illinois Supreme Court held that the Illinois Constitution's due process clause did not permit an Illinois court to exercise personal jurisdiction over a non-resident Maryland police officer who, while carrying out his duties as a Maryland police officer, committed an alleged tort in Illinois by conducting an extradition in Illinois in error. 565 N.E.2d at 1318. The court recognized that the Supreme Court, based on its analysis in *Calder v. Jones*, 465 U.S. 783 (1984), would have permitted the exercise of personal jurisdiction by virtue of the fact that the tort was directed at, committed in, and had effects in Illinois. The Illinois Supreme Court, however, held that the Illinois Constitution did not permit the exercise of jurisdiction. *Rollins*, 565 N.E.2d at 1318. Instead, based on the state constitution the Illinois court adopted a so-called fiduciary shield doctrine, under which employees whose only contact with Illinois stems from acts carried out within the scope of their employment are protected from being haled into court – even if their contacts include allegedly tortious conduct. *Id.*; *see Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994) (recognizing the fiduciary shield doctrine and noting that it "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal").

The fiduciary shield doctrine does not apply here since it appears clear that, when Collins submitted the September 2010 affidavit on behalf of SK Foods, he was not an SK Foods employee; indeed, Collins himself avers that he became a director and officer of Cedenco only *after* SK Foods had sold Cedenco. In addition, assuming that Collins conspired with Salyer to drain SK Foods of its assets in an attempt to avoid any judgment that might have been (and ultimately was entered) against SK Foods in this court, the fraudulent transfer of money is not within the scope of one's employment; even if Cedenco was an SK Foods subsidiary when Collins submitted his affidavit, engaging in illegal conduct would have violated his fiduciary duties. Finally, to the extent that his submission of an affidavit could be said to have arisen out of his work as an accountant, there is no evidence to suggest that Collins was hired to submit an affidavit; rather, Collins was hired to prepare tax returns. Indeed, nothing about the affidavit suggests it was anything but a voluntary act of Collins inserting himself into proceedings in this court just before this court issued its judgment.

Personal jurisdiction analysis under the federal due process clause begins with the long-settled test from *International Shoe Co. v. Washington*, which requires defendants to have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "Crucial to the minimum contacts analysis is a showing that the defendant 'should reasonably anticipate being haled into court'" in the forum state, *Coco*, 302 F.3d at 716 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), because "the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities'" there. *Coco*, 302 F.3d at 716 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). If a defendant's contacts are continuous and systematic

9

with the forum state, then a court may exercise "general jurisdiction" over the defendant even when the case in which jurisdiction is sought is unrelated to those contacts. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15, 415 n.9 (1984). Where continuous and systematic contacts are absent, a court may nevertheless exercise "specific jurisdiction" if the litigation is related to the defendant's contacts with the forum state. *Id.* at 414 n.8. Indeed, "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King*, 471 U.S. at 475 n.18 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Moreover, the defendant's physical presence in the forum state is not required at any point to support the exercise of jurisdiction. *Burger King*, 471 U.S. at 476.

BMO does not claim the court may exercise general jurisdiction. Instead, BMO argues that the court may exercise specific jurisdiction over Collins based on his allegedly tortious transfers of SK Foods' assets to avoid this court's judgment and his submission of the affidavit in the underlying litigation. The court concludes that the affidavit alone constitutes a sufficient basis for the exercise of specific personal jurisdiction and does not consider whether the alleged transfers would support jurisdiction.

In order for there to be specific jurisdiction, "the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction . . . [and must be evaluated] by reference to the particular conduct underlying the claims made in the lawsuit." *Tamburo*, 601 F.3d at 702 (citing *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009)). Specific jurisdiction is appropriate where (1) the defendant has either purposefully directed his or her activities at the forum state or purposefully availed him- or herself of the privilege of conducting business in that state; (2) the alleged injury arises out of or is related to the defendant's forum-related activities; and (3) the exercise of specific personal jurisdiction

10

comports with traditional notions of fair play and substantial justice as required by the federal due process clause. *Tamburo*, 601 F.3d at 702.

### 1. *Collins Purposefully Directed His Affidavit Toward Illinois.*

The primary rationale of the purposeful direction requirement is to "'ensure that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state.'" *Id.* (internal quotation marks omitted) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)). Here, there is nothing random, fortuitous, or attenuated about Collins' affidavit contact with Illinois: while the affidavit may have been prepared in California, it was specifically directed to this forum to raise an affirmative defense in litigation here. Indeed, the caption at the top of Collins' affidavit indicates that the affidavit was prepared for submission to the Northern District of Illinois. The caption further indicates that the affidavit was prepared for the court's consideration in case number 09 C 3479 (*i.e.*, in the underlying breach of contract action). In his affidavit, Collins anticipated being called to testify in this court, stating, "If called upon to testify in this case, I could competently testify to the following facts based upon my personal knowledge." (*See* Collins Decl.) Given the foregoing, Collins' affidavit was purposefully directed at Illinois.

### 2. *BMO's Belief that Collins Has Information About the Whereabouts of SK Foods, LLC's Assets Arose Out of Collins' Submission of His September 2010 Affidavit.*

The second prong of the specific jurisdiction test requires pinpointing, in the ordinary case, a legal injury. The prong's application is most obvious when parties dispute a contract or when a party alleges a tort was committed against it. *See, e.g.*, *Coco*, 302 F.3d at 716-17 (discussing specific jurisdiction in the context of a disputed contract and observing that only the "'dealings between the parties in regard to the disputed contract'" are relevant for a specific

jurisdiction minimum contacts analysis (quoting *RAR*, 107 F.3d at 1277)). For instance, in a tort suit against a nonresident, the tort must arise out of or be related to the defendant's minimum contacts in order for the court to exercise specific jurisdiction. In a citation proceeding against a third party, however, no legal injury is alleged as having been committed by the third party. Instead, what gives rise to this proceeding is BMO's showing that Collins might hold or control assets to which BMO is entitled.

BMO's evidence that Collins may have pertinent information is based in the affidavit. In the affidavit, Collins revealed that he provided services as an accountant for "Salyer and the related Salyer family entities." (*See* Collins Decl.) Collins also provided his business address. The court can reasonably infer that Collins, in his capacity as an accountant for Salyer and Salyer's companies (which would include SK Foods, LLC), has some knowledge of SK Foods' finances. In addition, BMO matched Collins' business address to the city, state, and zip code of the address of the person who, as reflected in bank records, used wire transfers to send millions of dollars from SK Foods, LLC's accounts overseas. (*See* Pl.'s Resp. to Cary Scott Collins' Mot. to Quash Citation to Discover Assets at 8, Ex. 9, & Ex. 13, ECF Nos. 99, 100-10, 100-14.)

### 3. *Asserting Jurisdiction over Collins Would Not Offend Traditional Notions of Fair Play and Substantial Justice.*

Finally, the exercise of personal jurisdiction over Collins would not offend traditional notions of fair play and substantial justice. While *International Shoe* first suggested the fair play requirement as part of the minimum contacts analysis, 326 U.S. at 316, it was in *Burger King* that the Supreme Court laid out factors and a burden-shifting scheme offering a framework for determining when the requirement is met. 471 U.S. at 477; *see also Tamburo*, 601 F.3d at 709 (applying the *Burger King* factors in analyzing the fair play requirement); *Hoffa Eng'g, LLC v. Craney*, No. 1:06-cv-481-JDT-TAB, 2007 WL 831820, at *7 (S.D. Ind. Mar. 12, 2007). The

factors the court may consider in "appropriate cases" are (1) the burden on the defendant of litigating in the forum; (2) the interests of the forum; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of states in furthering fundamental substantive policies. *Burger King*, 471 U.S. at 477. However, when "a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* Here, Collins has purposefully directed his affidavit at Illinois, in an attempt to provide information material to the disposition of the underlying proceeding here, and thus created a substantial connection with the forum; as a result, Collins must present a compelling case that jurisdiction is unreasonable under the *Burger King* factors in order to avoid the assertion of jurisdiction over him.

Collins has not met this burden. While he contends that appearing in court in Illinois would be burdensome, both logistically and financially, such concerns are diffused by consideration of what is at stake in the exercise of jurisdiction here. Indeed, Collins will not be on trial in Illinois. Collins may not even need to come to Illinois. BMO has offered to have Collins sit for a citation deposition at his convenience in California. If that deposition reveals (a) no SK Foods assets in Collins' possession or control, or (b) material information about the location of the assets, then the citation proceeding will end.

Moreover, the interests of the forum and the interests of the plaintiff in seeking relief are both substantial here: the forum has a substantial interest in seeing judgments issued under its laws satisfied, and the plaintiff has a substantial interest in obtaining the relief the court has already granted. The citation proceeding also fosters judicial efficiency, at least to the extent that

it permits satisfaction of a judgment through a flexible process that does not require BMO to file a separate lawsuit against Collins to secure assets to which BMO is entitled.

## CONCLUSION

For the foregoing reasons, the court denies both Collins' motion to dismiss and/or quash the Citation for lack of personal jurisdiction and BMO's motion *in limine*.


ENTER:

                                        /s/
                                   JOAN B. GOTTSCHALL
                                   United States District Judge

DATED: September 30, 2011